IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRONTIER CONTRACTING, INC.<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>ALLEN ENGINEERING CONTRACTOR, INC., et al.,<br><br>　　　　　　　Defendants.<br>_____ / | CASE NO. CV F 11-1590 LJO DLB<br><br>**ORDER ON DEFENDANTS' MOTIONS FOR F.R.Civ.P. 12 RELIEF AND TO SEVER**<br>(Doc. 24. |

**INTRODUCTION**

Defendants[1] seek to dismiss as inadequately pled and legally barred plaintiff Frontier Contracting, Inc.'s ("Frontier's") quantum meruit and fraud claims and to sever claims arising from two separate construction projects in Sequoia National Park ("Park"). Frontier responds that it has adequately pled fraud sounding claims to avoid dismissal and that severance of its claims is unsupported. This Court considered defendants' F.R.Civ.P. 12 motions and F.R.Civ.P. 21 motion to sever on the record without

---

[1] Defendants are Allen Engineering Contractor, Inc. ("Allen") and its sureties Safeco Insurance Company of America ("Safeco") and Liberty Mutual Insurance Company ("Liberty Mutual") and will be referred to collectively as "defendants."

1

a hearing. *See* Local Rule 230(g). For the reasons discussed below, this Court DISMISSES Frontier's fraud claim and otherwise DENIES defendants' requested relief.[2]

## BACKGROUND[3]

### Summary

The SAC claims that Allen owes more than $2.6 million for services and materials which Frontier provided as a subcontractor on two Park construction projects. Safeco and Liberty Mutual provided performance/payment bonds for Allen as the prime contractor for the projects. Defendants attack the SAC's quantum meruit and fraud claims as indefinite and legally barred and seek to sever claims relating to the two separate construction projects.

### Teaming Agreement

On February 3, 2010, Frontier and Allen attempted to enter into a Teaming Agreement ("teaming agreement") for the two federal highway Park projects. The teaming agreement retained Frontier as a first-tier subcontractor to complete improvements to the Park's Generals Highway ("highway project") for $14 million and to the Park's Kings River Bridge ("bridge project") for $6 million.[4] For the highway and bridge projects, Allen posted with Liberty Mutual and Safeco $13,451,012.50 and $5,999,662 performance/payment bonds to comply with the Miller Act, 40 U.S.C. §§ 3131, 3133.

Under the teaming agreement, Frontier was to perform physical construction and Allen was to provide administrative experience and pay Frontier with draws from the Federal Highway Administration ("FHA") pursuant to Allen's prime contract. Although Frontier's president signed the teaming agreement, Allen did not. Frontier and Allen proceeded as if the teaming agreement were "signed and in place" with "Frontier routinely performing the construction duties contemplated under the Agreement and Allen paying Frontier the agreed-upon monies that Allen received through Allen's

---

[2] Defendants' reply papers seek to strike Frontier's opposition papers as untimely and based on "factual statements of counsel unsupported with an affidavit." Although this Court will not strike Frontier's opposition papers, this Court ADMONISHES Frontier that it will not accept further untimely or factually unsupported papers. This Court assures defendants that it placed no value on Frontier's unsupported statements.

[3] The factual recitation is derived generally from Frontier's Second Amended Complaint for Damages ("SAC"), the target of defendants' challenges.

[4] Defendants note that the highway and bridge projects are separated by more than 70 miles at opposite Park ends.

2

1  contract with FHA."

## Missing Payments

Beginning in September 2010, Allen made partial payments to Frontier and by January 2011, Allen stopped payments on the highway project and made nominal payments on the bridge project. As of August 2011, Allen owed Frontier more than $2.6 million. Allen diverted funds it received from FHA to pay personal business debts in connection with a partnership dissolution and unrelated to the contract with FHA.

Beginning in March 2011, Allen had utilized Frontier's personnel to train Allen's workers to perform Frontier's construction duties under Allen's guise "to provide additional manpower to assist with the projects." On June 30, 2011 after Frontier had completed training Allen's workers, Allen sent Frontier a stop notice to advise Frontier workers not to return to the job sites.

## Frontier's Claims

The SAC alleges Miller Act, quantum meruit and fraud claims, the last two of which are at issue here and will be discussed in detail below. The SAC seeks more than $2.6 million general damages as well as punitive damages.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants attack the quantum meruit and fraud claims as indefinite and legally barred.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to

the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

4

to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino*

///
///
///

*v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *see Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

With these standards in mind, this Court turns to defendants' challenges to the SAC.

**Fraud**

The SAC's (third) fraud claim alleges that Allen "misled Frontier with its statements that it would make full monthly payments as contemplated under the Agreement, and that the use of Frontier's equipment to train Allen's workers would provide the benefit of extra manpower."  The fraud claim further alleges that "Allen committed constructive fraud when it breached its duties to Frontier and misled Frontier as to its intentions or ability to pay monies due and the nature of the training of Allen's workers."

Defendants fault the fraud claim as alleging breach of contract in the guise of a tort claim.

Contracts are the means by which parties mutually define their respective obligations, risks, and rewards. *Erlich v. Menezes*, 21 Cal.4th 543, 558, 87 Cal.Rptr.2d 886 (1999). Limiting available damages to those contemplated by the parties when they entered into the contract encourages commercial activity by enabling parties to assess in advance the financial risks of the enterprise. *Erlich*, 21 Cal.54th at 558.

"A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas v. Superior Court of San Diego County*, 24 Cal.4th 627, 643, 101

---

[5] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

Cal.Rptr.2d 718 (2000), *superseded by statute on other grounds, Rosen v. State Farm Gen'l Ins. Co.*, 30 Cal.4th 1070, 135 Cal.Rptr.2d 361 (2003). "'[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.'" *Erlich*, 21 Cal.4th at 552, 87 Cal.Rptr.2d 886, *quoting Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 107, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995) (Mosk, J., concurring and dissenting).

The California Supreme Court has explained the analysis limiting tort claims arising out of commercial contracts:

> The benefits of broad compensation must be balanced against the burdens on commercial stability. Courts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be . . . to aid rather than discourage commerce.

*Erlich*, 21 Cal.4th at 554, 87 Cal.Rptr.2d 886 (internal quotations and citations omitted ).

"Providing tort remedies in connection with a breach of contract is particularly inappropriate when the sole injury to the plaintiff is economic." *Erlich,* 21 Cal.App.4th at 554–55, 44 Cal.Rptr.2d 420. When a fraud claim is based on a parties' alleged failure to comply with a contractual duty, "the proper cause of action is breach of contract, not fraud." *Auto Industries Supplier Employee Stock Ownership Plan (ESOP) v. Snapp Systems, Inc.*, 2006 WL 3627935 at *5 (E.D. Mich., December 12, 2006) (No. 03–74357); *see Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993) (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform").

Defendants attribute the fraud claim to allege damages resulting from Allen's failure to pay Frontier pursuant to the teaming agreement. Defendants appear to rely on allegations that Allen made "promises to Frontier to procure labor and materials when Allen could not afford them on its own" and "Allen gained an advantage of time and material to the prejudice of Frontier when it misled Frontier with its statements."

Frontier responds that "[t]his is not just a contract dispute." Without referencing specific SAC allegations or facts, Frontier reiterates fraud elements. Frontier makes broad statements that Allen actively mislead Frontier and that Frontier relied on Allen to Frontier's detriment. The gist of Frontier's

fraud claim is that Allen diverted FHA monies intended for Allen and convinced Allen to devote its manpower, equipment and supplies to the highway and bridge projects.

Frontier attempts to twist its contract claims into tort. "One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers – interlopers who have no legitimate interest in the scope or course of the contract's performance." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514, 28 Cal.Rptr.2d 475 (1994).

The California Supreme Court has further explained:

> Contract and tort are different branches of law. Contract law exists to enforce legally binding agreements between parties; tort law is designed to vindicate social policy. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 3733].) We have described the essential difference between contract and tort law as follows: "As Professor Prosser has explained: '[Whereas] [c]ontract actions are created to protect the interest in having promises performed,"[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily on social policy, and not necessarily based upon the will or intention of the parties . . . .'" (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)
>
> Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' (Sec. 1708, Civ. Code.) This duty is independent of the contract . . . .' [A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " (*Jones v. Kelly* (1929) 208 Cal. 251, 255 [280 P. 9422].)

*Applied Equipment*, 7 Cal.4th at 514-515, 28 Cal.Rptr.2d 475.

Frontier takes an approach that Allen is a third party and thus owes duties not to interfere with an agreement between Frontier and Allen. Allen is not a third party. The SAC suggests that Frontier and Allen reached agreement, at least in part, on the highway and bridge projects which was not solidified in writing. The absence of a written contract does not transmute Allen's alleged breach into tort, especially considering the absence of facts to support Allen's "legal duty" to Frontier beyond alleged contract terms. The SAC alleges no more than Allen's failure to comply with contractual duties. Allen's intent to breach agreements is irrelevant in the context alleged in the SAC. The SAC lacks, and Frontier fails to raise, facts to support a potential fraud claim. The SAC's fraud claim is subject to

dismissal with prejudice.

## Quantum Meruit

The SAC's (second) quantum meruit claim alleges that Frontier and Allen proceeded as if the teaming agreement "had been finalized in its entirety" with Frontier providing time and materials as per the teaming agreement and Allen accepting Frontier's time and materials and compensating Frontier consistent with the teaming agreement. The claim further alleges that the parties' conduct "indicates that they intended to proceed in a manner consistent with the Agreement."

Defendants challenge the quantum meruit claim in that the SAC alleges that Frontier performed pursuant to the teaming agreement, a written contract.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Huskinson & Brown v. Wolf,* 32 Cal.4th 453, 458, 9 Cal.Rptr.3d 693 (2004).

In *Hedging Concepts*, 41 Cal.App.4th at 1419, 49 Cal.Rptr.2d 191, the California Court of Appeal explained limits to quantum meruit or quasi-contract recovery:

> A quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice. . . . However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation. . . .
>
> Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms. Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject. A quantum meruit analysis cannot supply "missing" terms that are not missing. "The reason for the rule is simply that where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability. . . ." *Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605, 613, 119 Cal.Rptr. 646.

"There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613, 119 Cal.Rptr. 646 (1975).

9

Defendants argue that the SAC relies on the existence of a written contract in that the SAC alleges "both parties proceeded as if the Agreement were in fact signed and in place, with Frontier routinely performing the construction duties contemplated under the Agreement and Allen paying Frontier the agreed-upon monies that Allen received through Allen's contract with the FHA." Defendants contend that the SAC alleges that the teaming agreement covers the highway and bridge projects to vitiate recovery under quantum meruit.

Frontier responds that denial of a quantum meruit claim is premature in that this "Court has not decided whether the two contracts exist." Frontier continues that if "no actual contract existed" between Allen and Frontier, a "quasi-contract should be found."

The SAC alleges that Frontier and Allen proceeded as if the teaming agreement were in place. Since Allen did not sign the teaming agreement, its is not enforceable against Allen. Frontier is thus left to pursue either breach of oral contract terms or a quantum meruit claim. The SAC alleges missing contract terms, especially in the absence of an enforceable written contract. The SAC sufficiently alleges circumstances under which Frontier provided services and materials under an understanding with Allen that Frontier would be compensated. As such, Frontier is entitled to proceed on its quantum meruit claim.

**More Definite Statement**

Defendants contend that the SAC is unintelligible in that the teaming agreement "relates exclusively" to the highway project. Defendants point to the teaming agreement's section 1.0 "Scope" provision, which states:

> This Agreement relates exclusively to the Contract and associated teaming agreement negotiations concerning contract DTFH68-10-C-00015 for the Construction of CA PRA SEKI 10(8), Generals Highway located in Sequoia National Park, CA. In no way does this Agreement constitute an understanding regarding or affiliation with any other projects, programs, business activities, or efforts which may be undertaken by the Parties, either jointly or separately.

Defendants challenge the SAC as uncertain as to whether it alleges "a breach of two separate contracts" or whether the allegedly breached contract was oral or both oral and written. Defendants point to the absence of written contract pertaining to the bridge project.

F.R.Civ.P. 12(e) empowers a party to seek "a more definite statement of a pleading to which a

responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."   A F.R.Civ.P. 12(e) motion "attacks the unintelligibility of the complaint, not simply the mere lack of detail." *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1169 (E.D. Cal. 2005)*; see Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D. Nev. 1984); *Nelson v. Quimby Island Reclamation Dist.*, 491 F.Supp. 1364, 1385 (N.D. Cal. 1980).  "A court will deny the motion where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted." *Neveu*, 392 F.Supp.2d at 1169 (citing *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal.1996)). A F.R.Civ.P. 12(e) motion should be denied if the pleading provides a "short and plain statement" of the claim showing that the pleader is entitled to relief. *Virgen v. Mae*, 2007 WL 1521553, *2 (E.D. Cal. 2007) (citing F.R.Civ.P. 8(a)(2)).  A F.R.Civ.P. 12(e) motion is proper only where the complaint is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal.1999) (internal quotations and citation omitted).

      Defendants fail to establish vagueness or ambiguity to entitle them to F.R.Civ.P. 12(e) relief. Purported vagueness and ambiguity is of Allen's making in that it failed to sign the teaming agreement. The SAC sufficiently alleges that Frontier performed work on the highway and bridge projects for which it expected be paid from FHA funds paid to Allen.  The contours of the Allen and Frontier's understanding or agreement is a matter of factual proof on which Frontier bears the burden.  This Court anticipates that discovery will resolve vagueness or ambiguity which defendants claim to experience, including any as to price, subject matter, duration and location.

### **Severance**

      Defendants argue that the highway and bridge projects are complex and distinct to warrant severance of claims pertaining to each project.

      F.R.Civ.P. 21 empowers a court "at any time, on just terms" to "sever any claim against a party." F.R.Civ.P. 21 applies when claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present a common question of law or fact. *See* F.R.Civ.P. 20(a); *Pan Am Airways v. United States Dist. Ct.*, 523 F.2d 1073, 1080 (9th Cir. 1975).  Courts have broad discretion regarding severance.  *Davis v. Mason County*, 927 F.2d 1473, 1479 (9th Cir. 1991).

Defendants argue that the complexity of the issues and potential for jury misunderstanding warrant severance of claims regarding the highway and bridge projects, which involve different locations and tasks. Defendants note that "the plans, specifications, means and methods for completing each FHA project/contract are different" to involve distinct facts, laborers and materials. Defendant continue that given the "complicated convoluted processes," a jury would be confused to consider differing performances, breaches, and damages of two separate projects. Defendants further point to the differing sureties, performance/payment bonds and related obligations for the separate projects.

Frontier responds that the highway and bridge projects were performed, at times, simultaneously and used interchangeable management, laborers, equipment and supplies which traveled between the highway and bridge projects. Frontier notes the 1½ hour proximity of the highway and bridge projects. Frontier argues that severance "would require double the amount of court time, attorney and witness time to litigate the issues."

Defendants fail to demonstrate sufficient grounds to severe claims pertaining to the highway and bridge projects. Defendants broadly claim complexity and convolution without identifying specifics. Frontier has raised issues that the highway and bridge projects involve interchangeable factual and legal issues. Moreover, severance would thwart effective use of this Court's and the parties' limited resources.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the SAC's fraud claim;
2. DENIES dismissal of the SAC's quantum meruit claim;
3. DENIES F.R.Civ.P. 12(e) relief for a more definite statement;
4. DENIES severance of claims pertaining to the highway and bridge projects; and
5. ORDERS defendants, no later than March 5, 2012, to file and serve an answer to the SAC.

IT IS SO ORDERED.

Dated:   February 13, 2012            /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE