1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                    **EASTERN DISTRICT OF CALIFORNIA**

6

7   FRONTIER CONTRACTING INC.;                **11-cv-1590 GSA**
    UNITED STATES GOVERNMENT[1],
8
                 Plaintiffs,
9
          v.
10
    ALLEN ENGINEERING
11  CONTRACTOR, INC.; SAFECO
    INSURANCE COMPANY OF
12  AMERICA; LIBERTY MUTUAL
    INSURANCE, and DOES 1-50,
13
                 Defendants.
14
    _____
15                                            **ORDER DENYING DEFENDANTS'**
    ALLEN ENGINEERING                         **MOTION FOR SUMMARY JUDGMENT**
16  CONTRACTOR, INC.;
                                              **(Doc. 89)**
17
                 Counter-Claimant,
18
          v.
19
    FRONTIER CONTRACTING, INC.,
20
                 Counter-Defendants.
21
22

23

24      I.      **Introduction**

25         Pending before the Court is Defendants, Safeco Insurance Company of America, and Liberty

26  Mutual Insurance Company's (collectively "Defendants") Motion for Summary Judgment.

27  _____
    [1] The Complaint filed by Frontier Contracting Inc. improperly lists the United States as a party.  However, the United
28  States has never made an appearance in this action.

                                              1

(Doc.89). Plaintiff, Frontier Inc. ("Frontier"), filed an opposition (Doc. 94 and 95) and the Defendants filed a Reply (Doc. 96 and 97).  The Court took this matter under submission pursuant to Local Rule 230(g).  Upon a review of the pleadings, Defendants' Motion for Summary Judgment is DENIED.

## II.      Plaintiff's Complaint

Plaintiff's complaint alleges that on or about February 3, 2010, Frontier and Allen Engineering Contractor, Inc. ("Allen") entered into a teaming agreement to complete two U.S. Federal Highway projects in Sequoia and Kings Canyon National Parks.  Plaintiff contends that Allen was the prime contractor, and that Frontier was a first-tier subcontractor.  The two projects involved completing improvements to: (1) the General's Highway, a $14 million project (contract #DTFH68-10-C-00015), and (2) the Kings River Bridge, a $6 million project (contract # #DTFH68-10-C-00033).  Under the terms of the teaming agreement, Allen was to provide the administrative duties, while the Frontier was to perform the physical construction.  At Allen's request, Defendants Safeco and Liberty Mutual furnished the required performance/payment bonds under the Miller act. 40 U.S.C. § 3131(b).

Frontier alleges that during the course of the projects, disputes arose beginning in September 2010, between the parties resulting in only partial payments being made by Allen to Frontier.  By January 2011, Allen stopped making payments on the General's Highway project altogether, and only made nominal payments on the King's River Bridge project.  Frontier contends that efforts to receive payments were unsuccessful.

Beginning March 2011, Plaintiff alleges that following Allen's refusal to pay all monies due, Allen utilized Frontier's personnel to train Allen's workers on how to perform the construction duties that Frontier had been performing.  On June 30, 2011, after Allen's employees were trained by Frontier, Allen sent Frontier a stop notice advising Frontier workers not to return to the job

site.  By August 2011, Allen allegedly owed Frontier $2,641,947.75.

Based on the above, Frontier filed its Complaint on September 20, 2011 (Doc. 2), a First Amended Complaint on October 6, 2011 (Doc. 9), and a Second Amended Complaint ("SAC") against all Defendants on November 18, 2011. (Doc. 16).  The SAC alleges causes of action for violations of the Miller Action, Quantum Meruit, and Fraud. Plaintiff seeks $2,641,947.75 in general damages; $2,000,000.00 in punitive damages; pre and post-judgment interest at the rate of 10%; attorney's fees and costs; as well as any other just relief.

On March 5, 2012, Allen filed a Counterclaim against Frontier alleging Breach of Contract, Reasonable Value of the Contracts, and Negligence. (Doc. 34).  Defendants seek compensatory, consequential and special damages in the amount of $1,800,000.00 for breach of the first contract; $4,190,910.39 for breach of the second contract; reasonable value of services rendered on both contracts; attorney's fees; costs and other just relief.

### III.      Defendant's Motion for Summary Judgement

In the Motion for Summary Judgment, Defendants contend that Frontier was not a subcontractor.  Instead, the teaming agreement alleged in the SAC created a joint venture between the parties.  Defendants argue that the existence of the joint venture is fatal to Frontier's case because a subcontractor relationship is required to state a claim under the Miller Act.  In opposition, Plaintiff argues that the teaming agreement, which was never signed by Allen, contemplated Frontier as a first-tier subcontractor for both projects.  In support of its position, Frontier contends that there is conflicting evidence including deposition testimony from each of the presidents of the corporations on this issue, as well as other documents indicating a subcontractor relationship existed thereby creating a genuine dispute as to material facts.  As such, Defendants' Motion for Summary Judgment should be denied.

///

3

1

2      ## IV.      Summary Judgment Standard

3          Any party may move for summary judgment, and the Court shall grant summary judgment if

4      the movant shows that there is no genuine dispute as to any material fact and the movant is

5      entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

6      *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

7      whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

8      parts of materials in the record, including but not limited to depositions, documents, declarations,

9      or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

10     genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

11     Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the

12     record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3);

13     *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord*

14     *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

15         Defendants do not bear the burden of proof at trial and in moving for summary judgment, they

16     need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*,

17     627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct.

18     2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to

19     designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle*

20     *Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show

21     more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby,*

22     *Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  In judging the evidence at the summary

23     judgment stage, the Court may not make credibility determinations or weigh conflicting evidence,

24     *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and

25     citation omitted), and it must draw all inferences in the light most favorable to the nonmoving

26

27

28

party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).

## V.      Analysis

### A.   Undisputed Facts

Both parties agree that the Forest Highway Association ("FHA") awarded the two projects to Allen.  (Undisputed Fact ¶ 2).  The terms of the contract with the FHA required Allen to furnish at least fifty percent of the work. (Undisputed Fact ¶ 6).   Frontier and Allen drafted a "teaming agreement" to complete work on the two projects as alleged in the SAC.  (Undisputed Fact ¶ 1). The written teaming agreement was never signed by Allen, however, the parties continued to work on the two projects together.[2]  At Allen's request, Defendants furnished the required Miller Act bonds.  (Undisputed Fact ¶ 3).  With the exception of these facts, the parties disagree on all other as material aspects this case.

### B.   The Miller Act

The Miller Act requires a general contractor on a federal construction project to furnish a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3133(b)(2). It "represents a Congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protections they might receive under state statutes with respect to the construction of nonfederal buildings." *Technica LLC ex rel. U.S. v. Carolina Cas. Ins. Co.*  749 F.3d 1149, 1152 (9th Cir. 2014) (citations omitted).    A cause of action under the Miller Act accrues "90 days after the day on which the person did or performed the last of the labor … for which the claim is

---

[2] The fact that Allen never signed the agreement was not identified as an undisputed fact by the parties.  However, Frontier's papers reference this fact and Allen has not indicated that a signed written contract exists. Moreover, neither party has presented a signed agreement.

made" and "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action."  40 U.S.C. § 3133(b).

The Miller Act was enacted to ensure that subcontractors are paid for labor and materials expended on federal projects.  *U.S. ex rel. Acoustical Concepts, Inc. v. Travelers Cas. And Sur. Co. of America*, 635 F. Supp. 2d 434 (E.D. Va., July 17, 2009).  Conversely, the Miller Act payment bond does not make a surety liable for labor and materials for monies expended on the contract by a partner or joint venture.  *Hardaway v. National Surety Co.*, 211 U.S. 552 (1909); *U.S. for the Use of Briggs v. Grubb*, 358 F. 2d 508, 511 (9th Cir. 1966); *St Paul-Mercury Indemnity Company v. United States ex rel. Jones*, 238 F. 2d 917 (10th Cir. 1956). Here, the Defendants argue that evidence of a joint venture exists.

The analysis of whether a party qualifies as a subcontractor under the Miller Act focuses on the substantiality and importance of the party's relationship with the prime contractor. *F.D. Rich Co., Inc., v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 123 (1974). There is no exact test to make this determination, however, a subcontractor has been defined by the United States Supreme Court as one who performs and takes from the prime contractor a specific part of the labor or material requirements of the original contract …" *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co*. 322 U.S.102, 109 (1944).

Similarly, in order to determine whether a joint venture exists, courts must examine the relationship between the parties.  *United States ex rel. PPC., Inc. v. Star Ins. Co.*, 90 F. Supp. 2d 512, 518 (D.N.J. 2000);  *St. Paul Mercury*, 238 F. 2d at 921 (noting that "[t]he true relationship must be determined by the conduct of the parties, together with all material facts and circumstances.").  Some key factors indicative of a joint venture is whether parties have a right to control the performance of the work, and whether there is an agreement to share in the profits and losses. *United States ex rel. Woodington Electric Co. v. United Pacific Insurance Co.*, 545 F. 2d

6

1381, 1382 (4th Cir. 1974) citing *United States ex rel. Briggs*, 358 F. 2d at 508; *St Paul-Mercury*, 238 F. 2d at 917; *U.S. ex rel. of Altman v. Young Lumber*, 376 F. Supp. 1290 (D.C.D.S. 1974). "In the absence of an express or implied agreement to share losses of the enterprise, the sharing of profits in itself does not create a joint venture that will defeat recovery from the surety under the Miller Act." *Woodington Electric Co.,* 545 F. 2d at 1383.  The assumption of the other entity's payroll is also an important factor in determining whether a joint venture exists. *Briggs*, 358 F. 2d at 512.

### C.  Genuine Disputed Facts Exist

Allen argues that the mere existence of the teaming agreement, or portions of the teaming agreement, establishes that a joint venture existed.  However, the Code of Federal Regulations indicates that teaming agreements may be used to form a partnership or joint venture, as well as a subcontractor relationship.  48 CFR § 9.601.  Thus, the fact that a teaming agreement existed is not conclusive of a joint venture; the conduct of the parties, together with all material facts and circumstances must be evaluated.[3] *St. Paul Mercury*, 238 F. 2d at 921.

Here, the provisions of the unsigned teaming agreement and the teaming discussions are not determinative because they support the position that *both* a joint venture and a subcontractor relationship was contemplated at various times. *Compare,* Teaming Discussion, ¶8 (capital assets purchased for project as joint ownership) (Doc. 89-5, pg. 3); Teaming Discussion, ¶ 9 (even splitting of profits) (Doc. 89-5); Teaming Agreement  ¶ 2.1 (Doc. 89-5, pg. 6) ("The relationship of the Parties is that of independent contractors.  No Party shall act as the agent for, or partner of the other.  Nothing in this Agreement shall be deemed to constitute … a joint venture."); Teaming Agreement, ¶ 3.1 (Doc. 89-5, pg. 6) (As the proposed Prime Contractor, [Allen] shall retain

---

[3] The binding effect of the unsigned agreement was not addressed by the parties. However, both parties appear to agree that a contract existed.  As such, the Court has not ruled on this issue.

responsibility over all contractual activities … as well as be the primary point of contact with the

Government ….).[4]  Moreover, Frontier has submitted Standard Form 1413, a FHA form, that

appears to be signed by the governmental project manager, identifying Allen as the prime

contractor and Frontier as the subcontractor on the project.  The form identifies Frontier's role on

the project as being limited to performing concrete construction tasks such as excavation and

backfill, thereby suggesting a subcontractor relationship with Allen.[5]  (Doc. 95-2, pgs. 19-20).

Furthermore, although Allen argues to the contrary, the extent to which any terms of the

agreement were reached remains in dispute.  For example, during his deposition, Arthur Vollert,

President of Frontier, testified that during the teaming discussions, capital assets were to be

evenly split, but that Frontier did not purchase any capital assets.  Instead, Allen purchased capital

assets and refused to jointly title the assets.  Arthur Vollert Deposition Transcript dated October

16, 2013, pg. 20 line 22-pg. 24, line 3 (Doc. 89-4 pgs. 23, line 22-pg. 27, line 3).  Similarly, Mr.

Vollert testified that each party would be liable for 50% of the payment of liquidated damages

assessed by the government, and that the parties would share in the losses. Arthur Vollert,

Deposition Transcript, pg. 38, line 19-24; pg. 42, line 2-8 (Doc. 89-4, pgs. 32, Line 19-24; pg. 46

line 2-8).   However, he later testified that parties never discussed how losses would be handled.

Arthur Vollert, Deposition Transcript, pg. 40, line  22-25. (Doc. 95-2, pg. 9, lines 22-25).

Finally, the two presidents of the companies gave inconsistent testimony regarding their

understanding of the agreement.  Art Vollert, President of Frontier, testified that Frontier was not

a subcontractor on the Kings River Bridge project.[6]  Deposition of Art Vollert dated October 23,

---

[4] The teaming agreement Defendants filed with the Court did not contain a complete copy of section 14.0, or section 15.0, which appear to address the sharing of losses. See, Doc. 89-5. pgs.  13-14.

[5] The Court has reviewed Defendant's objections to all of Plaintiff's evidence on foundation and authentication bases (Doc. 97).  However, the Court will permit the use of Plaintiff's evidence for purposes of summary judgment as the proper foundation can be laid at trial.

[6] This testimony was given in a related case in this district, *United Rentals Inc. v. Avcon Constructors, Inc. et al.*,

1    2013, pg. 8, lines 11-18 (Doc. 96-1, pg. 5, lines 11-18).  Conversely, Roger Tate, President of

2    Allen, testified that Frontier was the subcontractor on the project whose job was to complete

3    structural concrete and excavation.  Roger Tate, Deposition Transcript, pg. 11- line 1- pg. 12, line

4

5    19. (Doc. 95-2, pg, 23 line 1 – pg. 24, line 19).  Thus, each of the presidents' testimonies

6    contradict their respective positions on whether a subcontract or a joint venture existed.  Given all

7    of the above, there is sufficient evidence in the record that raises a triable issue of fact regarding

8    whether Frontier was a subcontractor or whether a joint venture existed.

9        **VI.    Conclusion**

10       The Court may not weigh the parties' evidence or assess the credibility of the evidence.

11   Here, a genuine dispute of material facts exists.  As such, Defendants' Motion for Summary

12   Judgment is DENIED.

13

14

15   IT IS SO ORDERED.

16       Dated:   **September 25, 2014**                          **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28   Case No. 1:12-cv-1656 AWI-GSA.